1  Robert S. Green (State Bar No. 136183)
   James Robert Noblin (State Bar No. 114442)
2  Emrah M. Sumer (State Bar No. 329181)
3  **GREEN & NOBLIN, P.C.**
   2200 Larkspur Landing Circle, Suite 101
4  Larkspur, California  94939
   Telephone:  (415) 477-6700
5  Facsimile:  (415) 477-6710
6  Email:  gnecf@classcounsel.com

7  *Attorneys for Plaintiffs*

8

9                  **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11

12  DIANE DAKIN, DEBORAH DESPAIN and         Case No.:
    MARILYN CURREN, individually, and on
13  behalf of all others similarly situated,

14                                            **CLASS ACTION COMPLAINT**
                 Plaintiffs,                  **FOR VIOLATIONS OF:**
15                                                **(1) CAL BUS. & PROF. CODE**
                                                       **§ 17200, *ET SEQ.***
16  vs.                                            **(2) BREACH OF EXPRESS**
                                                       **WARRANTIES**
17  HORMEL FOODS SALES, LLC, and
    HORMEL FOODS, LLC,                         **DEMAND FOR JURY TRIAL**
18
                 Defendants.
19

20

21

22

23

24

25

26

27

28

Diane Dakin, Deborah Despain, and Marilyn Curren (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following:

## I.    SUMMARY OF THE ACTION

1.      Plaintiffs bring this action individually, and on behalf of all other persons who made a purchase of Hormel Black Label Center Cut Bacon ("Center Cut") within the State of California ("Class") at any time between the period from August 6 , 2017 to the present ("Class Period"). As alleged herein, Hormel Foods Sales, LLC and Hormel Foods, LLC (collectively "Hormel" or "Defendants") engaged in, and continue to engage in, unlawful business practices and deceptive acts in connection with the marketing of Center Cut bacon which have resulted in injury to Plaintiffs and the Class.

2.      Hormel engaged in deceptive marketing practices to misrepresent Center Cut bacon through the nutritional claim "Contains 25% Less Fat Than Our Regular Bacon" ("Nutritional Claim") that is featured in the front panel of each Center Cut product.

3.      This misleading claim has allowed Center Cut bacon to be sold to consumers at a price premium over other Hormel bacon products alongside which Center Cut is often placed in grocery store shelves.

4.      The Nutritional Claim leads the typical consumer to think that Center Cut is a premium product that should command a higher per-pound price because it is 25% leaner than other Black Label bacon. However, Center Cut is not 25% leaner than any Black Label bacon product to which a consumer could reasonably be expected make the fat comparison, as well as any Black Label product Plaintiffs have been able to identify.

5.      To justify its "contains 25% less fat" claim, Center Cut advertises the amount of fat contained in a smaller, 15 gram, serving of Center Cut bacon,  compared to the amount of fat contained in significantly larger serving sizes of Hormel Original bacon  ("Original").

6.      Much of the fat savings being advertised on Center Cut bacon are due to a reduction in the serving size that Hormel uses for Center Cut bacon vis-à-vis Original bacon – not due to Center Cut bacon being 25% leaner than Original bacon.

00118563.000

7.     Hormel's label asks consumers to eat less Center Cut bacon to consume less while paying a premium price for this privilege.

8.     To further hide the confusing and misleading nature of the Nutritional Claim, Hormel refers to its "Regular Bacon", rather than the more precise and understandable term "Original Bacon".

9.     As a result, consumers who purchase Center Cut bacon end up with a product that is not as lean as they were led to believe.

10.    Some consumers expressed their disappointment on the web page Hormel maintains for Center Cut bacon with comments such as "The 'showcase' piece looked pretty good but the rest of the package was mainly fat! It was in no way 25% less fat than regular bacon", and "If this is 25% less fat than your normal bacon, your regular bacon must be nothing but fat!", and "…25% less fat? – once I removed the camouflage packaging it was mostly fat."[1]

11.    The Nutritional Claim also confuses consumers into thinking the product that is being compared to Center Cut in the Nutritional Claim must not be Original bacon but some other Black Label product because it advertises a fat reduction that is inconsistent with what the nutritional labels of Center Cut bacon and Original bacon indicate.

12.    Collectively, these violations deceive consumers and make it impossible to ascertain to which product Center Cut is being compared by using the information provided on the Center Cut package.

13.    The confusing and misleading nature of Hormel's label declaring Center Cut contains 25% less fat than our Regular Bacon is illustrated by recent manipulations of the serving size and fat content of the Original Bacon, which is the actual product to which the term Regular Bacon refers.  At some point in the first half of 2021, Hormel changed the serving size and fat content of its Original Bacon (the "Hormel Original Modification").  Prior to the Hormel Original Modification, the serving size of Original Bacon was 18g with a fat content of 7g. After the Hormel Original Modification, the serving size of Original Bacon was reduced to 15g,

---

[1] As of the date of filing this Complaint, these reviews were available at https://hormel.com/Brands/Bacon/Black-Label-Bacon/center-cut-bacon

but the relative fat content per gram was increased, so that each serving size still had 7g of fat. However, the labelling on the Center Cut package was not changed. Prior to and after the Hormel Original Modification, it proclaimed itself to be 25% less fat than Hormel's Regular Bacon, even though the Original had changed both its serving size and the ratio of fat to lean. Both before and after, consumers are confused and deceived by the 25% less fat label. As used in this Complaint, the references to Original Bacon refer to the version sold with 18g serving sizes, unless otherwise indicated.

14. Hormel's conduct, alleged herein, constitutes an unlawful and deceptive commercial practice in violation of Consumer Legal Remedies Act and of Cal. Bus. and Prof. Code Section 17200 through violations of several California and federal statutes including California's False Advertising Laws, the Sherman Food Law, and United States Code Title 21, Chapter 9, Section 343. Plaintiffs seek monetary damages.

## II. PARTIES

### A. Plaintiff Diane Dakin

15. Plaintiff Diane Dakin is a natural person residing in the City of Bodega Bay, California.

16. During the Class Period, Ms. Dakin purchased Hormel Center Cut bacon many times at the Grocery Outlet and Safeway stores she patronizes.

17. Ms. Dakin purchased Hormel Center Cut bacon in each of the years during the Class Period.

18. Most recently, she purchased Hormel Center Cut in January 2021, shortly before becoming aware that the product is not as lean as advertised.

19. Before selecting Center Cut during that purchase, Ms. Dakin viewed the "Contains 25% Less Fat Than Our Regular Bacon" claim on the Center Cut package.

20. The claim led Ms. Dakin to believe that Center Cut would be a "meatier bacon" containing less fat.

21. Ms. Dakin paid approximately $6.00 for this purchase. She selected Hormel Center Cut over other bacon products that were priced lower and/or contained more bacon for

the same retail price because the Nutritional Claim led her to believe Hormel Center Cut was 25% leaner than other Hormel bacon being sold.

22.    Ms. Dakin's most recent Center Cut purchase in January 2021 was made through Safeway's online grocery ordering service.

23.    Prior to filing this lawsuit, Ms. Dakin logged on to her Safeway account to check the exact price she paid for Center Cut bacon during that purchase, but this information was no longer available for her to view.

24.    However, on information and belief, both the exact price Ms. Dakin paid for Center Cut bacon in that transaction and the sale prices of other bacon products that were available for purchase that day can be obtained from Safeway's corporate information systems during discovery.

25.    Ms. Dakin does not recall the exact price she paid for each of her Center Cut purchases during the Class Period. However, on multiple occasions, she recalls selecting Center Cut over other bacon products that were priced lower and/or contained more bacon for the same retail price because the Nutritional Claim led her to believe Hormel Center Cut was 25% leaner than other Hormel bacon being sold.

**B.    Plaintiff Deborah Despain**

26.    Plaintiff Deborah Despain is a natural person residing in the City of Buena Park, California.

27.    Ms. Despain purchases Hormel Black Label bacon exclusively.

28.    Ms. Despain has a preference for leaner cuts of bacon containing less fat.

29.    Ms. Despain has purchased Hormel Center Cut bacon from her local Albertsons Vons grocery store in Fullerton, California on numerous occasions.

30.    Most recently, she purchased Center Cut bacon from the same Albertsons Vons store in November, 2020 and paid a price between $6.99 and $8.99.

31.    Before making a purchasing selection, Ms. Despain viewed the "Contains 25% Less Fat Than Our Regular Bacon" claim on the Center Cut product packaging.

00118563.000

32.     During these purchases, the fat content claim on Center Cut bacon played a role in Ms. Despain's decisions to select Center Cut bacon over competing bacon products from Hormel,

33.     Prior to becoming aware of the misleading nature of the fat content claims on Center Cut bacon, Ms. Despain had observed much of her Center Cut bacon seemed to "melt away" when she cooked the product and wondered whether Center Cut bacon was as lean as advertised.

34.     Ms. Despain purchased Hormel Center Cut bacon in each of the years 2017 through 2020.

**C.     Plaintiff Marilyn Curren**

35.     Plaintiff Marilyn Curren is a natural person residing in the City of Fullerton, California.

36.     Due to Ms. Curren's health condition, she makes an effort to reduce her fat intake when feasible.

37.     As part of her efforts to consume less fat, Ms. Curren had been purchasing Center Cut bacon for a premium price under the belief that the product featured a leaner cut of meat than other Hormel bacon products.

38. Ms. Curren purchased Hormel Center Cut bacon in each of the years during the Class Period.

39.     Her most recent purchase of Center Cut bacon was in or around January, 2021 at which time she paid approximately $8.00 for a package of Center Cut bacon.

40.     Soon after this purchase, she became aware that Center Cut is not as lean as the Nutritional Claim suggests and stopped purchasing Center Cut bacon.

41.     If not for the misleading Nutritional Claim, Ms. Curren would not have purchased Center Cut bacon at the prices she paid for the product.

**D.     Defendant Hormel Foods Sales, LLC**

42.     Defendant Hormel Foods Sales, LLC is a Delaware limited liability company.

00118563.000

43.    Hormel Foods Sales, LLC is a 100% owned subsidiary of Hormel Foods Corporation.

44.    Hormel Foods Sales, LLC advertises the corporate headquarters of Hormel Foods Corporation, 1 Hormel Place, Austin, MN 55912, as its address on Center Cut products.

45.    On information and belief, Hormel Food Sales, LLC is directly controlled by Hormel Foods Corporation.

46.    According to the information that is displayed on Center Cut bacon packages, Hormel Foods Sales LLC is the distributor of the Center Cut bacon product that the Plaintiffs purchased.

**E.    Defendant Hormel Foods, LLC**

47.    Defendant Hormel Foods, LLC is a Minnesota limited liability company.

48.    Hormel Foods, LLC is a 100% owned subsidiary of Hormel Foods Corporation.

49.    According to information displayed on Center Cut packaging, Hormel Foods, LLC holds the copyrights to the information that is displayed on Center Cut packaging, including the deceptive Nutritional Claim that is the subject of the allegations herein.

50.    Hormel Foods, LLC also maintains the web site through which it markets Center Cut bacon using deceptive marketing claims as alleged herein.

**III.    JURISDICTION AND VENUE**

51.    This action is brought under diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), in that at least one named Plaintiff is a citizen of state different from at least one of the Defendants, and the aggregate amount in controversy for all Class members exceeds $5,000,000, exclusive of interest and costs. The number of Class members is greater than 100.

52.    The Northern District of California has specific personal jurisdiction over Hormel with regard to the claims asserted in this action because Hormel's contacts with the state of California in which this Court is located are continuous, systematic, and purposeful, and the specific claims in this action arise from those particular contacts.

00118563.000

53.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) because Hormel is subject to this Court's personal jurisdiction with respect to this action.

## IV.     FACTUAL ALLEGATIONS

### A.     Allegations Related to Cal. Bus. & Prof. Code § 17500, *et seq.,* and Breach of Express Warranties Claims

54.      Under its Black Label Bacon brand, Hormel manufactures and markets over 19 varieties of bacon products that are intended for sale to retail customers.

55.     Hormel's Center Cut bacon is one of the bacon products Hormel markets under its Black Label Bacon brand.

#### 1.     Misleading and Confusing Claims Made on Center Cut Packaging

56.     Center Cut bacon displays the Nutritional Claim "25% Less Fat Than Our Regular Bacon" on the front of each retail package.



57.     The Nutritional Claim is prominently displayed on the front panel of the Center Cut package where consumers making purchase decisions can quickly notice it.

58.     The Nutritional Claim is printed in a font size that is almost as large as the Black Label Center Cut brand label.

00118563.000

59. Not counting the brand label, it is by far the largest text featured on the Center Cut packaging.

60. The Nutritional Claim is intended to influence and does successfully influence the purchasing decisions of the consumers who view it.

61. With the statement "Contains 25% Less Fat Than Our Regular Bacon" the Nutritional Claim leads consumers into thinking that, ounce-for-ounce or gram-for-gram, Center Cut has a fat content that is 25% lower than the reference product identified as "Our Regular Bacon" in the Nutritional Claim. The Nutritional Claim leads consumers to think Center Cut bacon is 25% leaner that the product Hormel refers to as "Our Regular Bacon".

62. The Nutritional Claim is misleading because, ounce-for-ounce and gram-for-gram, Center Cut did not contain 25% less fat than any other Black Label bacon product.

63. Furthermore, Hormel makes it difficult for consumers to discover the misleading nature of the Nutritional Claim by failing to identify the Hormel bacon product it refers to with the phrase "Our Regular Bacon".

> **a.    The Nutritional Claim Lacks Sufficient Information to Identify the Product Against Which Center Cut Is Being Compared**

64. The Center Cut product packaging contains no information that would allow consumers to identify the reference product that is referenced by the phrase "Our Regular Bacon".

65. Hormel does not market a product called "Hormel Black Label Regular Bacon".

66. Hormel markets at least 19 versions of Black Label bacon products.

67. Consumers are left to decide for themselves whether Hormel's Regular Bacon is any of the numerous bacon products marketed by Hormel such as:

- HORMEL® BLACK LABEL® Bacon 1 Lb

- HORMEL® BLACK LABEL® Bacon 48 oz

- HORMEL® BLACK LABEL® Original 24oz Stack Pack

- HORMEL® BLACK LABEL® Original Thick Cut Bacon

- HORMEL® BLACK LABEL® Bacon Lower Sodium 48oz

00118563.000

1    • HORMEL® BLACK LABEL® Low Salt Bacon 12 oz

2    • HORMEL® BLACK LABEL® Brown Sugar

3    • HORMEL® BLACK LABEL® Brown Sugar Bacon 24oz Stack Pack

4    • HORMEL® BLACK LABEL® Premium Brown Sugar Thick Cut Bacon

5    • HORMEL® BLACK LABEL® Applewood Smoked Thick Sliced Bacon 12 oz

6    • HORMEL® BLACK LABEL® Premium Applewood Bacon

7    • HORMEL® BLACK LABEL® Cherrywood

8    • HORMEL® BLACK LABEL® Premium Cherrywood Thick Cut Bacon

9    • HORMEL® BLACK LABEL® Cherrywood 24oz Stack Pack

10   • HORMEL® BLACK LABEL® Jalapeno

11   • HORMEL® BLACK LABEL® Maple Black Pepper

12   • HORMEL® BLACK LABEL® Maple Flavor Bacon l lb

13   • HORMEL® BLACK LABEL® Premium Pecanwood Bacon

14   • HORMEL® BLACK LABEL® Pecanwood Bacon 24oz Stack Pack

15   68.    The variations Hormel makes to the product weight for otherwise identical

16   sounding products can have implications for the product's fat content. (For example, compare

17   HORMEL® BLACK LABEL® Bacon 1 lb. containing 9 grams of fat per 24 grams to

18   HORMEL® BLACK LABEL® Bacon 48 oz. containing 9 grams of fat in a smaller 21 gram

19   serving.)

20            **b.    For Most of the Class Period, None of the Regularly Sold
                     Hormel Black Label Products Had 25% Lower Fat Content
21                   Than Center Cut Bacon**

22   69.    It is not possible to identify from the information on the Center Cut package what

23   Black Label product is referenced by the phrase "Our Regular Bacon" in the Nutritional Claim.

24   70.    Plaintiff Dakin sent Hormel an inquiry about the reference product mentioned in

25   the Nutritional Claim and was told that the "statement on the package is comparing it to our

26   original BLACK LABEL® Bacon."

27

28

00118563.000

71.    As shown in the side-by-side comparison attached hereto as Exhibit 1, prior to the Hormel Original Modification, a package of Original bacon did not have 25% less fat than a similar size serving of Original bacon.

72.    The nutritional panel on the back of a package of Hormel Original bacon purchased from a Safeway store in Corte Madera, California in February 2020 indicates that the product contained 7 grams of fat per serving and that the serving size was 18 grams.  Thus, 1 gram of Original bacon would have contained 0.389 grams of fat.

73.    In contrast, according to the nutritional panel on the back of Center Cut bacon, this product contains 5 grams of fat per serving. The serving size for Center Cut bacon is defined as 15 grams. Thus, 1 gram of Center Cut bacon contains 0.333 grams of fat.

74.    At 0.333 grams of fat per gram of bacon, Center Cut bacon's fat content is 14% less than Original bacon's fat content of 0.389 grams of fat per gram of bacon.

75.    Gram-for-gram, Center Cut bacon contains 14% less fat than Original bacon – not 25% less fat as the Nutritional Claim suggests. *See* Exhibit 1.

76.    Hormel's business records would show when Hormel Original Modification took place and when the modified product has been sold to California consumers.

c.    **To the Extent the Nutritional Claim Refers to Original or Thick Cut Bacon as "Our Regular Bacon", Hormel Should Have Known Consumers Would Be Misled and Confused**

77.    The typical consumer would have been unable to discover the truth about Hormel's 25% less fat claim when purchasing Center Cut bacon at the store because the nutritional facts are buried in calculations.

78.    Center Cut bacon's fat content calculations are based on a 15 gram serving whereas Original bacon's fat content calculations were based on the larger 18 gram serving size.

79.    Therefore, the "25% less fat" claim in the Nutritional Claim was achieved in large part by making Center Cut bacon's serving size smaller – a simple accounting trick that did not boost the relative healthiness of Center Cut bacon.

80.    Hormel's manipulated serving sizes would not have been discoverable by most consumers because to understand them, one would have to perform several calculations

involving division and multiplication of various nutritional facts from the nutritional panels of Center Cut and Original bacon products.

81.    It is neither reasonable nor realistic to assume a typical consumer would engage in such a calculation at the grocery store aisle.

82.    The typical consumer spends a few seconds when making a purchase decision and grabs one type of product before moving to the next purchase.

83.    Even in their home after having purchased a Black Label product, the typical consumer would have had either the Center Cut, or the Original – not both and thus would still not be able to determine the truth of the 25% less fat calculation.

84.    Hormel knows, or with the exercise of reasonable care, should have known that the Nutritional Claim is misleading.

> **d.    Hormel Used the Nutritional Claim to Sell Center Cut Bacon at a Premium Price**

85.    At 12 ounces per package, Center Cut contains one-fourth less bacon than other Black Label Bacon products, which typically contain 16 ounces of bacon per package.

86.    Despite containing less bacon, Center Cut typically retails for the same price as other Black Label Bacon products containing 16 ounces of bacon such as Original bacon and Thick Cut bacon.

87.    Thus, ounce-for-ounce, Center Cut costs more than Black Label products containing 16 ounces of bacon.

88.    Hormel's policy appears to be to price 12 ounce Center Cut packages similarly to other Black Label bacon products that contain 16 ounces of bacon, so that it retails for the same price per package as other Black Label bacon containing 16 ounces per package.

89.    The confusing and misleading nature of the Nutritional Claim is a primary factor as to why consumers will purchase Center Cut bacon for the same retail price as other Black Label bacon products that contain more bacon per package.

90.    The Nutritional Claim is vague because Hormel does not make clear on Center Cut packaging the reference product that the Nutritional Claim refers to with the phrase "Our Regular Bacon".

00118563.000

91.    The Nutritional Claim is misleading because Center Cut was not 25% leaner than Original bacon or any other Black Label bacon consumers can be expected to associate with the phrase "Our Regular Bacon"

92.    The Nutritional Claim is also misleading because Hormel varies the serving size of its various Hormel Black Label bacon products, thereby making it more difficult for consumers to determine how much leaner Center Cut is than other Black label bacon by comparing the nutritional information on different Black Label products.

93.    The Nutritional Claim materially influenced each of the Plaintiffs to pay a premium price for Center Cut bacon based on the mistaken belief that they were purchasing a bacon product that was 25% leaner than other Black Label bacon.

94.    Were it not for the unlawful nature of the Nutritional Claim, Plaintiffs and members of the Class would not have purchased Center Cut bacon at the premium price to other Hormel Black Label products, or they would have purchased a different bacon product.

95.    Plaintiffs and members of the putative class of plaintiffs suffered losses as a result of being improperly induced to pay a higher price per pound for the Center Cut bacon during the Class Period.

e.    **Hormel Could Have Used Consistent Serving Sizes for Center Cut and the Reference Product to Make the Nutritional Claim Less Deceptive**

96.    For most of the Class Period, the nutritional panel on the back of the Original bacon packages defined one serving of Original bacon as consisting of 2 pan-fried slices weighing 18 grams. (Exhibit 1).

97.    Then, sometime between February, 2020 and June, 2021, Hormel quietly changed the information in the Original bacon nutritional panel so that a serving now was defined as 2 pan-fried slices weighing 15 grams. (Exhibit 2).

98.    However, even after this modification, Original bacon continued to have 7 grams of fat per serving – even though its serving size was now 17% smaller (at 15 grams rather than 18 grams).

00118563.000

99.    The Hormel Original Modification made Original bacon fattier – because it now had the same amount of fat for a smaller serving size.

100.    Perversely, the Hormel Original Modification brought no health benefits to Center Cut consumers because Center Cut bacon is no less fatty today than it was prior to this modification.

101.    On the other hand, the modification continues to cause harm to consumers of Original bacon who are now being sold bacon with a higher fat content – probably without their knowledge.

102.    The Hormel Original Modification demonstrates that Hormel has the ability to modify the serving sizes for its products at will. It could have made this modification when it first started making the Nutritional Claim to avoid misleading consumers about Center Cut bacon's fat content. It did not do so.

103.    Hormel carried out the Hormel Original Modification very recently – more than three years into the Class Period.

104.    Therefore, prior to the date of the Hormel Original Modification, the Nutritional Claim could not have accurately represented that Center Cut was 25% leaner than Original bacon.

### 2.    Misleading Claims Made On Hormel's Web Site

105.    Defendant Hormel Foods, LLC maintains the web site www.hormel.com on which various Hormel Black Label products including Center Cut bacon are marketed.

106.    The web site contains a marketing page dedicated to Center Cut bacon, that is located at the URL https://hormel.com/Brands/Bacon/Black-Label-Bacon/center-cut-bacon ("Center Cut Web Site").

107.    The Center Cut Web Site displays a picture of the Center Cut bacon packaging displaying the deceptive Nutritional Label "Contains 25% Less Fat Than Our Regular Bacon" along with the description ("Center Cut Web Site Claim"):

> Our center cut bacon comes from the center of the pork belly. This area of the pork belly has 25% less fat, which means less fat in your belly. It's [sic] taste makes it the center of attention.

00118563.000

108.     Thus, center cut bacon should contain 25% less fat <u>ounce-per-ounce</u> than regular bacon, or to put it differently, center cut bacon should offer a cut of meat that is <u>25% leaner</u> than regular bacon.

109.     The side-by-side positioning of the Nutritional Claim and the Center Cut Web Site Description, along with their similarly worded messages which respectively describe Center Cut bacon and cuts from the center of the pork belly as having "25% less fat" in slightly different contexts leads the typical consumer to believe Center Cut bacon is 25% leaner than other Hormel Black Label Bacon products.

110.     Until the Hormel Original Modification, Center Cut bacon was not 25% leaner than other Black Label bacon because a comparable sized serving of Center Cut bacon does not contain 25% less fat, or even 15% less fat, than other Black Label bacon products.

111.     Exhibit 3 contains true and correct representation of the Center Cut Web Site as of March 25, 2021 in the form of a screenshot that was taken on that date.

112.     According to the footer that is displayed at the bottom of the Center Cut Web Site, the copyrights for the contents of the Center Cut Web Site belong to Hormel Foods, LLC.

113.     The Center Cut Web Site Claim serves to reinforce the misleading consumer perceptions that Nutritional Claim promotes about Center Cut bacon's fat content.

**B.     Allegations Related to 21 CFR 101.13 and Cal. Health & Safety Code § 109875,** *et seq.*

**1.     The Nutritional Claim Is a "Relative Claim" under 21 CFR 101.13(j)**

114.     The Nutritional Claim fails to satisfy the requirements for permissive nutritional claims a manufacturer may include in the product panel under federal food labeling laws and regulations.

115.     The Nutritional Claim is a "relative claim" under 21 CFR 101.13(j) because it "compares the level of a nutrient in the food with the level of a nutrient in a reference food".

00118563.000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. Hormel Fails to Identify the Reference Food Mentioned in Nutritional Claim

116.    However, the Nutritional Claim does not comply with the 21 CFR 101.13(j) requirement that foods bearing relative claims "state the identity of the reference food" at a location "immediately adjacent to the most prominent claim". 21 CFR 101.13(j)(2)(ii).

117.    The Nutritional Claim is the most prominent claim that is made on the Center Cut bacon packaging.

118.    The Nutritional Claim identifies the reference food in the claim as "Our Regular Bacon" without providing any explanation as to what Hormel Black Label bacon product is referenced by the words "Our Regular Bacon".

119.    This information does not help consumers identity the reference food because it could be referring to any of Hormel's many Black Label products.

120.    The only other information that can be discerned about the referenced product from the Center Cut packaging is the statement "Fat Content Has Been Reduced From 7g to 5g Per Serving" which is found in back panel of the product.

121.    This additional information is similarly insufficient to identify the reference food as discussed below.

### 3. Hormel Changes Serving Sizes Across Its Bacon Products Thereby Increasing Consumer Confusion

122.    Had Hormel's numerous Black Label bacon products contained similar amounts of fat per similar size servings of food, Hormel's failure to properly identify the reference product would have been immaterial because the fat reduction advertised in the Nutritional Claim could have applied to most Hormel Black Label products. That is not the case.

123.    Hormel's Black Label bacon products show great variance in their fat content both in terms of how much fat they contain ounce-for-ounce and in terms of how much fat they contain per recommended serving. (The two are not the same because Hormel uses vastly different serving sizes for different Black Label bacon products.)

124.    A comparison of the nutritional labels of various Black Label bacon products shows that a serving of Black Label can contain as little as 5 grams of fat and as much as 9

00118563.000

1    grams – almost twice the amount. (*E.g.,* compare Center Cut bacon containing 5 grams of fat in

2    each 15 gram serving to Thick Cut bacon containing 9 grams of fat in each 24 gram serving).

3        125.    Hormel further adds to this confusion by using different serving sizes for its

4    various bacon products as it sees fit.

5        126.    For example, the nutritional label for the Black Label Thick Cut bacon that is

6    sold in 16 ounce packages displays a fat content of 9 grams per each 24 gram serving of bacon.

7    Exhibit 4. In contrast, according to Hormel's web site, the <u>seemingly identical</u> Black Label

8    Thick Cut that is sold in a 48 ounce package uses a smaller, 21 gram serving size despite having

9    the same amount (9 grams) of fat per serving. Exhibit 5.

10        127.    Thus, identically named Black Label products can contain different ratios of fat

11    to protein – or have varying degrees of leanness.

12        128.    Because of all this variation, it is not possible for consumer to know from the

13    Nutritional Claim and from the Center Cut packaging statement "Fat Content Has Been

14    Reduced from 7g to 5g Per Serving", which Hormel product is being referred to in the

15    Nutritional Claim.

16        129.    For example, "Fat Content Has Been Reduced from 7g to 5g Per Serving", could

17    be referring to the Black Label Jalapeno Thick Cut Bacon containing 7 grams of fat per 20 gram

18    serving (Exhibit 6) or to Black Label Original bacon containing 7 grams of fat per 18 gram

19    serving (Exhibit 7).

20        130.    Whether the comparison being made in the Nutritional Claim is to Jalapeno

21    Thick Cut Bacon or to Original Black Label is not a trivial one.

22        131.    Even though both of the aforementioned products contain 7 grams of fat per

23    serving, they are not equally lean.

24        132.    The different serving sizes being used for these two products means that the

25    Jalapeno Thick Cut Bacon contains 10% less fat than a similar sized serving of Original bacon.

26        133.    Therefore, a 25% fat reduction, as advertised in the Nutritional Claim, would

27    result in a significantly leaner product in Center Cut bacon, if the reference product were

28    Jalapeno Thick Cut Bacon rather than Original bacon.

00118563.000

134.    Because Hormel leaves out the information necessary to identify the reference product from the Center Cut packaging and because Hormel is in the practice of selling a large number of bacon products that vary in fat content and serving size, the Nutritional Claim is likely to cause consumer confusion.

135.    The recent Hormel Original Modification, which altered the fat content of Original bacon without making any changes to Center Cut bacon packaging, has further contributed to consumer confusion.

136.    Since the Nutritional Claim uses Original bacon as the reference product, and since Original bacon's fat content has been modified, consumers now have no way of knowing whether the Nutritional Claim might have been referring to the Original bacon product which contained 7 grams of fat per 18 gram serving (as was the case before the modification) or to the Original bacon product which contained 7 grams of fat per 15 grams of serving (as is the case today).

137.    Thus, the Hormel Original Modification makes the Nutritional Claim even more confusing for consumers.

138.    Varying what constitutes a serving across Black Label bacon products as Hormel does is inconsistent with what FDA intended when it formulated its rules for nutritional tables. "FDA sought to ensure that foods that have similar dietary usage, product characteristics, and customarily consumed amounts have a uniform reference amount." 21 CFR § 101.12(a)(9). (Emphasis added.)

139.    Hormel's nutritional labeling practices render its reference to "Our Regular Bacon" in the Nutritional Claim devoid of any useful meaning.

140.    Faced with this mind-numbing variation of serving sizes and fat contents across numerous Black Label products, a consumer has no way of knowing what reference product Hormel might be referring to as "Our Regular Product" in the Nutritional Claim.

### 4.    The Information Provided in the Nutritional Claim Is Internally Inconsistent with Information Shown in the Nutritional Panel

141.    The Nutritional Claim also violates other requirements of 21 CFR 101.13(j) by misstating the relative fat content of Center Cut bacon in the Nutritional Claim.

00118563.000

142.    The representation, "Contains 25% Less Fat Than Our Regular Bacon" is not a statement that is mathematically consistent with the nutritional values shown in the Center Cut bacon and the values shown in the nutritional label of Original bacon, the reference product that Hormel has identified upon inquiry.

143.    According to the nutritional labeling displayed on Original bacon, a serving of Original bacon contains 7 grams of fat.

144.    In contrast, according to the nutritional labeling displayed on Center Cut bacon, a serving of Center Cut bacon contains 5 grams of fat.

145.    A reduction from 7 grams to 5 grams of fat as shown in the respective nutritional panels of the two products amounts to a 28.6% reduction.

146.    However a fat reduction of 28.6% is not the same as a fat reduction of 25% as advertised in the Nutritional Claim.

147.    Therefore, the fat comparisons that can be derived from the respective nutritional panels of Center Cut bacon and Original bacon are inconsistent with the fat comparison advertised in the Nutritional Claim.

148.    This inconsistency removes a level of detail that a consumer comparing the nutritional panels of the two products would need in order to piece together that Original bacon is the reference product mentioned in the Nutritional Claim.

149.    The inconsistency makes such a comparison impossible by creating confusion. It provides the consumer with contradictory fat content comparisons even when the consumer bases the comparison on the differing serving sizes Hormel has selected for each respective bacon product.

150.    Upon seeing that the Nutritional Claim refers to a product with 25% less fat, but the nutritional labels of Original and Center Cut bacon indicate a 28.6% fat reduction per serving, most consumers will likely conclude the product referenced in the Nutritional Claim must not be Original bacon because, otherwise, the numbers in the Nutritional Claim would have matched those from the nutritional panels.

00118563.000

151.    Given the many variations in the serving size and fat contents of various Black Label bacon products, the internally inconsistent fat reduction claim made in the Nutritional Label further hinders consumers' ability to identify the reference product mentioned in the Nutritional Claim.

## V.    CLASS ALLEGATIONS

152.    Plaintiffs bring this action on behalf of themselves and the members of the proposed Class under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure. The proposed Class consists of the following:

> All California residents who made retail purchases of Hormel Center Cut bacon at anytime from August 6, 2017 to the present within the State of California.

153.    Excluded from this Class are Hormel, its subsidiaries, affiliates, officers and directors, any entity in which Hormel has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

154.    Numerosity. Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that joinder is impractical. While the precise number is unknown, the Class consists of tens of thousands of individual consumers.

155.    Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the Nutritional Claim misleads the typical consumer into believing Center Cut bacon is 25% leaner than other Hormel Black Label Bacon products;

(b)    Whether Center Cut bacon is 25% leaner than the product that is referred to as "Our Regular Bacon" in the Nutritional Claim;

(c)    Whether the Nutritional Claim refers to Hormel Black Label Original Bacon, Hormel Thick Cut Bacon, or some other product by the phrase "Our Regular Bacon";

00118563.000

(d)     Whether the Nutritional Claim conforms to the requirements set forth in 21 CFR 101.13;

(e)     Whether the Nutritional Claim constitutes an advertisement for the purposes of Cal. Bus. & Prof. Code § 17500, *et seq.*;

(f)     Whether the use of the Nutritional Claim is intended to result in the sale of Center Cut bacon;

(g)     Whether Center Cut contains 25% less fat than the Hormel product referenced in the Nutritional Claim by the phrase "Our Regular Bacon";

(h)     Whether Hormel breached the express warranties it made under the Nutritional Claim;

(i)     Whether Class members are entitled to restitution, and in what amount;

156.    Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the members of the Class and, like all members of the Class, Plaintiffs purchased Center Cut bacon under the mistaken belief that it was 25% leaner than other Black Label Bacon products. Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

157.    Adequacy. Fed. R. Civ. P. 23(a)(4). Plaintiffs are each a representative who will fairly and adequately assert and protect the interests of the Class and have retained counsel experienced in prosecuting class actions. Accordingly, each Plaintiff is an adequate representative, who will fairly protect the interests of the Class.

158.    Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Hormel's wrongful conduct are relatively small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is thus remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

00118563.000

159.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Hormel. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## VI.    COUNTS

### COUNT I

### *Unlawful Business Practices*

(California Business & Professions Code § 17200, *et seq.*)

160.    Plaintiffs incorporate and reallege by reference each and every allegation above as if fully set forth herein.

**1.    Cal. Bus. & Prof. Code § 17500 Violations**

***False Advertising Law Violations***

161.    Cal. Bus. & Prof. Code § 17500 states it is "unlawful for any person, firm, corporation or association, … with intent directly or indirectly to dispose of real or personal property … to make or disseminate or cause to be made or disseminated before the public in this state… in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

162.    Hormel disseminates its Nutritional Claim to California consumers by means of placing it on each Center Cut bacon package that is sold in California grocery stores and by making claims on its web site suggestive of the fact that Center Cut bacon is 25% leaner than its "Regular" bacon.

163.    The Nutritional Claim is placed prominently on the front of each Center Cut package in order to be viewed and read by consumers who are in the process of making purchasing decisions and to induce such consumers to purchase Center Cut bacon.

-21-
CLASS ACTION COMPLAINT

00118563.000

164.    The Nutritional Claim contains information about the Center Cut bacon product because it compares the fat content of Center Cut bacon to another Hormel bacon product.

165.    The Nutritional Claim leads the consumer to believe Center Cut bacon is 25% leaner than Hormel's "Regular Bacon" because the typical consumer would have no reason to suspect that the Nutritional Claim is highlighting benefits that come, in part, from the manipulation of serving sizes across Center Cut bacon and the other Hormel bacon product being compared.

166.    Claims that advertise reduced fat content on the premise that consumers eat less of the referenced food are misleading because such claims do not inform the consumer about the inherent nature of the product being advertised. Instead, they advertise a benefit that is premised on mathematical manipulation and could be achieved by consumers without paying a premium price for the advertised product if they simply reduced their intake of the reference product in the manner that the Nutritional Claim seems to be suggesting.

167.    The Nutritional Claim is misleading because it leaves the typical consumer under the impression that Center Cut bacon is 25% leaner than Hormel's regular bacon product even though that is not the case.

168.    Hormel knows or should know with reasonable care that the Nutritional Claim is misleading.

## 2.    Cal. Bus. & Prof. Code § 17508 Violations

169.    Cal. Bus. & Prof. Code § 17508(a) states it is "unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact."

170.    The Nutritional Claim constitutes an advertisement because it is featured on the face of the Center Cut packages where it can be easily read by consumers who might use the information featured in the Nutritional Claim to inform their purchasing decisions.

00118563.000

171.    The Nutritional Claim makes a statement comparing the fat content of Center Cut bacon to that of another Hormel Black Label product.

172.    Fat is a nutritional component found in food. The nutrient contents of foods are always determined using factual evidence in the form of chemical analyses.

173.    Therefore, the Nutritional Claim purports to be based on factual evidence.

174.    Moreover, the Nutritional Claim's "Contains 25% Less Fat" claim makes a numerical comparison of the fat contents of Center Cut Bacon and another Hormel Black Label Bacon product.

175.    Numerical comparisons are always objective assertions.

176.     Therefore, the Nutritional Claim makes an advertising claim that purports to be based on objective evidence as well.

177.    The Nutritional Claim leads the consumer to believe Center Cut bacon is 25% leaner than Hormel's "Regular Bacon" because the typical consumer would have no reason to suspect that the Nutritional Claim is highlighting benefits that come, in part, from the manipulation of serving sizes across Center Cut bacon and the other Hormel bacon product being compared.

178.    Claims that advertise reduced fat content on the premise that consumers eat less of the referenced food are misleading because such claims do not inform the consumer about the inherent nature of the product being advertised. Instead, they advertise a benefit that is premised on mathematical manipulation and could be achieved by consumers without paying a premium price for the advertised product if they simply reduced their intake of the reference product in the manner that the Nutritional Claim seems to be suggesting.

### 3.    Federal Food, Drug, and Cosmetic Act Violations

179.    United States Code, Title 21, Chapter 9 ("FDCA") states that a food "shall be deemed misbranded [i]f (1) its labeling is false or misleading in any particular§ 343(a).

180.    As alleged herein, the Nutritional Claim's comparison of Center Cut bacon to Original bacon violates FDCA because it is misleading.

00118563.000

**a. Fat Is a Nutrient Subject to Regulation under FDCA**

181.    Section 343 of the FDCA grants the Secretary of Health and Human Services authority to regulate certain nutritional information that must be provided on a food label in order to "assist consumers in maintaining healthy dietary practices." § 343(q)(2)(A).

182.    The legislative intent to regulate food labeling with the purpose of assisting consumers maintain healthy dietary practices and the linkage between a person's fat intake and health is repeated numerous times in the FDCA and in the federal food code regulations published by the Department of Health and Human Services ("HHS"). "A healthful diet low in saturated fat, total fat, and cholesterol, as part of a healthy lifestyle, may lower blood cholesterol levels and may reduce the risk of heart disease". 21 CFR § 101.75(e)(3). "You may use the term 'health' or related terms… as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations if [t]he food meets the following conditions for fat". 21 CFR § 101.65(d)(2).

183.    Consistent with Congress's intent to assist consumers in making healthy dietary decisions through the enactment of federal food labeling laws, HHS has published a set of regulations under Title 21, Chapter I, Subchapter B, Part 101of the Code of Federal Regulations ("C.F.R.") to regulate the information that goes on a food label.

184.    The C.F.R. is a list of technical requirements that regulate what information must be provided on a food label and what information food manufacturers may provide on a food label at their discretion.

185.    The C.F.R. is very specific about the different requirements it imposes on manufacturers for the various statements they must and may make on different parts of the food label.

186.    The various requirements of the C.F.R. intricately complement each other to provide consumers with protection from deceptive food claims while giving manufacturers the freedom to distinguish their product through food labeling.

187.    Courts have recognized HHS's expertise in balancing these competing goals by deferring to the precise language of the C.F.R. when various sections of the C.F.R. are found to

00118563.000

be imposing contradictory requirements on different parts of a food label. (*See Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) holding that the fat content disclosure that a manufacturer was <u>required</u> to place on the nutritional panel of a food label pursuant to 21 C.F.R. §101.13(c) nonetheless violated other sections of the C.F.R. when it was also placed on the front of the label of the same product because product labeling outside of the Nutritional Facts Panel "was subject to the rules governing nutrition content claims, including that the claim not be 'false or misleading in any way.' 21 C.F.R. § 101.13(i)(3)." *Id.* at 771.)

188.    Hormel's Nutritional Claim violates both technical requirements of numerous sections of the CFR and the FDCA's overriding policy goal to "assist consumers in maintaining healthy dietary practices" because it combines misleading fat content claims with internally inconsistent statements that create consumer confusion about how lean Center Cut bacon really is.

189.    The FDCA deems a food to be misbranded if the food label contains claims about the nutrient level of any nutrient that is required to be in the nutritional information panel as per §343(q)(1)(D), unless such claims are made using only the "terms which are defined in regulations of the Secretary[2]." § 343(r)(2)A)(i).

190.    The requirements of § 343(r)(2)A)(i) apply to the Nutritional Claim because fat is one of the nutrients that is required to be in the nutritional information panel as per §343(q)(1)(D).

191.    Therefore, Center Cut bacon would be a misbranded food unless the Nutritional Claim is made using only the terms defined in the C.F.R. regulations released by the Secretary of HHS.

b.    **Nutritional Claim Constitutes a "Relative Claim" Under CFR**

192.    Under the applicable regulations issued by the Secretary of HHS, "[a] food may bear a statement that compares the level of a nutrient in the food with the level of a nutrient in a

---

[2] The regulation uses the term "Secretary" to refer to the Secretary of Health and Human Services.

00118563.000

reference food. These statements shall be known as 'relative claims' and include 'light,' 'reduced,' 'less' (or 'fewer'), and 'more' claims." 21 CFR 101.13(j).

193.     The Nutritional Claim constitutes a "relative claim" under 21 CFR 101.13(j) because it compares the fat content of Center Cut bacon to the fact content of another food with its "contains less fat" claim.

194.     "For foods bearing relative claims: (i) The label or labeling must state the identity of the reference food and the percentage (or fraction) of the amount of the nutrient in the reference food by which the nutrient in the labeled food differs…" 21 CFR 101.13 (j)(2)(i).

### c.     Nutritional Claim Violates 21 CFR 101.13 (j)(2)(i) By Failing to Properly Identify the Reference Food

195.     The Nutritional Claim does not comply with 21 CFR 101.13 (j)(2)(i) because it fails to identify the reference food, but rather makes reference to Hormel's "Regular Bacon" which is not a product that is marketed as such.

### d.     Nutritional Claim Violates 21 CFR 101.13(j)(2)(iv) Because It Fails To Provide Clear Quantitative Information About Its Fat Content

196.     In addition, the Nutritional Claim does not comply with the 21 CFR 101.13(j)(2)(iv) requirement that a label featuring a relative claim bear "[c]lear and concise quantitative information comparing the amount of the subject nutrient in the product per labeled serving with that in the reference food." 21 CFR 101.13(j)(2)(iv)(A).

197.     The Center Cut label violates this requirement because the only quantitative information it provides about the Nutritional Claim's fat comparison is the statement "Fat Content Has Been Reduced From 7g to 5g Per Serving" that is shown in the back panel of the Center Cut package.

198.     That statement is far from clear about the fat content that is being compared in the relative claim.

199.     The statement fails to identify the reference food and the serving size of the compared food. The omission of such relevant information leaves consumers without a context for evaluating the Nutritional Claim's "Contains 25% Less Fat" assertion in an informed manner.

00118563.000

200.    Without such context, Hormel's Nutritional Claim cannot be considered to provide clear information about whether and how much Center Cut's fat content has really been reduced.

201.    For example, prior to the Hormel Original Modification, a dieter who was in the habit of consuming 18 grams of Original bacon and had seen the Nutritional Claim and switched to Center Cut bacon and continued to consume the same quantity of bacon as before, would not have reduced his fat intake by 25% as the Nutritional Claim suggests. Instead, his fat intake would have been reduced only by 14%.

202.    Nothing in Center Cut's packaging provides such a consumer with the information necessary to reduce his or her fat intake by 25% through the consumption of Center Cut bacon because highly relevant comparative serving size information has been left out by Hormel.

<blockquote>
**e.      Nutritional Claim Violates 21 CFR 101.13(j)(1)(ii)(B) Because the Fat Content Advertised in Nutritional Claim Is Inconsistent with the Compared Products' Nutritional Labels**
</blockquote>

203.    The C.F.R. requires that "[t]he nutrient values used to determine the claim when comparing a single manufacturer's product to the labeled product shall be either the values declared in nutrition labeling or the actual nutrient values, provided that the resulting label is internally consistent to (i.e., that the values stated in the nutrition information, the nutrient values in the accompanying information and the declaration of the percentage of nutrient by which the food has been modified are consistent and will not cause consumer confusion when compared)…" 21 CFR 101.13(j)(1)(ii)(B).

204.    The Nutritional Claim violates multiple requirements imposed by 21 CFR 101.13(j)(1)(ii)(B) because (i) its "Contains 25% Less Fat" claim cannot be reconciled with the nutritional labeling or actual nutrient values of Original bacon (which Hormel has identified upon Plaintiffs' inquiry as the reference product); and (ii) its use creates consumer confusion by stating different fat reduction numbers than suggested on the nutritional panels of Center Cut and Original bacon packages.

00118563.000

205.    According to the nutritional panels provided on Center Cut bacon and Original bacon products, these two products contain 5 grams and 7 grams of fat per serving respectively.

206.    However, a reduction of fat from 7 grams to 5 grams constitutes a 28.6% reduction, not a 25% reduction as the Nutritional Claim advertises. Therefore, a consumer who is trying to identify what reference product is referenced in the Nutritional Panel by the term "Our Regular Bacon" by comparing the fat contents per serving that are shown in the nutritional panels of various Black Label bacon products would not know that the Nutritional Panel is making a comparison to Original Bacon.

207.    Instead, the consumer could conclude that the product referenced in the Nutritional Claim must be a Black Label product other than Original bacon because Center Cut has a 28.6% reduction per serving vis-à-vis Original bacon – not a 25% reduction.

208.    If Hormel is using the information from the nutritional panels of Original bacon and Center Cut bacon to make the Nutritional Claim, objective mathematical facts demonstrate a violation of CFR 101.13(j)(1)(ii)(B) because 28.6% is not the same as 25% and conflating these two numbers creates inconstant mathematical results. This violation also creates consumer confusion by making it difficult for the consumer to identify the reference product which Hormel has failed to name on its Center Cut product label.

209.    Alternatively, if Hormel used the actual nutrient values of Center Cut and Original bacon to determine the Nutritional Claim, these values would differ from what Hormel advertises in the Nutritional Claim.

210.    For the foregoing reasons, the Nutritional Claim violates CFR 101.13(j)(1)(ii)(B) because its determination is not based on a calculation that is permitted under this code.

**f.    Nutritional Claim Violates 21 CFR 101.13(j)(1)(ii)(B) Because It Causes Consumer Confusion When Compared**

211.    The Nutritional Claim does not comply with the 21 CFR 101.13(j)(1)(ii)(B) requirement that the "nutrient values used to determine the claim when comparing a single manufacturer's product to the labeled product" must result in a label that is internally consistent such that "the values stated in the nutrition information, the nutrient values in the accompanying

CLASS ACTION COMPLAINT

1   information and the declaration of the percentage of nutrient by which the food has been

2   modified are consistent and will not cause consumer confusion when compared".

3       212.    Given the considerable variation in the serving sizes and fat contents per serving

4   for various Black Label bacon products, changes to the fat content of the reference product, and

5   the internally inconsistent fat reduction claims alleged herein do cause consumer confusion

6   when compared because consumers have no way to understand how much Center Cut's fat

7   content has been reduced.

8       **4.    California Sherman Food, Drug, and Cosmetic Laws Violations**

9
10      213.    California's Sherman Food Law governing the labeling of foods sold in this state

11  ("Sherman Food Law") adopts "[a]ll food labeling regulations and any amendments to those

12  regulations adopted pursuant to [federal statutes governing food labeling] in effect on January 1,

13  1993, or adopted on or after that date" as the food regulations of the State of California. Cal.

    Health & Safety Code § 110100.

14
15      214.    Sherman Food Law has adopted CFR 101.13 by operation of law because the

16  latter is a regulation that was adopted pursuant to federal statutes governing food labeling in

    effect on January 1, 1993.

17
18      215.    Because the Nutritional Claim violates several sections of CFR 101.13 as alleged

19  herein, it violates the Sherman Food Law as well.

20      **5.    The Nutritional Claim is Unlawful Because It Violates Multiple
             Laws and Regulations**

21
22      216.    A business act or practice is "unlawful" under Cal. Bus. & Prof. Code § 17200, *et*

    *seq.* (the "UCL") if it violates any other law or regulation.

23
24      217.    The Nutritional Claim violates multiple sections of California's False

    Advertising Laws, the FDCA, and the Sherman Food Law.

25
26      218.    Because of these violations, Plaintiffs have been misled into paying a price for

    Center Cut bacon that they would not have otherwise paid.

27
28      219.    As a result, they have suffered losses in the form of monies they overpaid when

    purchasing Center Cut bacon.

00118563.000

220.     Plaintiffs request that this Court cause Hormel to restore the monies that Plaintiffs and all Class Members overpaid as a result of Hormel's unlawful practices. Otherwise, Plaintiffs, the respective Class they seek to represent, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

221.     Plaintiffs are entitled to an award of costs and attorneys' fees pursuant to California Code of Civil Procedure, section 1021.5.

## COUNT II

### *Breach of Express Warranties*

222.     Plaintiffs incorporate and reallege by reference each and every allegation above as if fully set forth herein.

223.     "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. U. Com. Code § 2313(1)(b).

224.     By misrepresenting Center Cut bacon as containing 25% less fat than Hormel's "Regular Bacon" without disclosing the details of how the Nutritional Claim justified this number, Hormel created an express warranty that the consumer is purchasing a bacon product that is 25% leaner than the typical Hormel Black Label bacon.

225.     Because Center Cut bacon does not live up to this promise, Hormel has breached and continues to breach its express warranty to Plaintiffs and Class members who do not receive the product that was promised to them.

226.     Hormel's breaches of the express warranty that is made in the Nutritional Claim is willful because, as the manufacturer of both Center Cut and other Hormel Black Label Bacon products, it knows the fat contents of all products mentioned in the Nutritional Claim.

227.     As a result of Hormel's willful breaches of its express warranty, Plaintiffs and all Class Members have suffered economic losses.

228.     Plaintiffs request that this Court cause Hormel to provide restitution to Plaintiffs and all Class Members in the amount of the damages they sustained as a result of

00118563.000

1    Hormel's breach of its express warranties as well as civil penalties pursuant to Cal. Civ. Code §

2    1794(c).

3            229.    Plaintiffs are entitled to an award of costs and attorneys' fees pursuant to Cal.

4    Civ. Code § 1794(d).

5                                    **PRAYER FOR RELIEF**

6            **WHEREFORE**, Plaintiffs and the Class demand judgment against Hormel as follows:

7            A.      An order certifying that this action may be maintained as a class action, that

8    Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class

9    Counsel;

10           B.      A judgment awarding Plaintiffs and all members of the Class for damages,

11   restitution or other equitable relief, including, without limitation, disgorgement of all profits and

12   unjust enrichment that Hormel obtained from Plaintiffs and the Class as a result of the unlawful,

13   unfair and fraudulent business practices described herein;

14           C.      A judgment awarding Plaintiffs the costs of suit, including reasonable attorneys'

15   fees, and pre and post-judgment interest; and

16           D.      Such other and further relief as may be deemed necessary or appropriate.

17                                      **JURY DEMAND**

18       Plaintiffs demand trial by jury on all claims so triable.

19   DATED:  August 6, 2021                    **GREEN & NOBLIN, P.C.**

20

21                                      By:    _s/ Robert S. Green_
22                                             Robert S. Green

23                                             James Robert Noblin
                                               Emrah M. Sumer
24                                             2200 Larkspur Landing Circle, Ste. 101
                                               Larkspur, CA  94939
25                                             Telephone: (415) 477-6700
                                               Facsimile: (415) 477-6710
26

27                                             Attorneys for Plaintiffs

28

---

CLASS ACTION COMPLAINT

00118563.000